UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VERTOS MEDICAL, INC.,

    Plaintiff,

    v.

GLOBUS MEDICAL, INC.,

    Defendant.

_____/

No. C 09-1411 PJH

**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

Plaintiff's motion for preliminary injunction came on for hearing before this court on October 28, 2009. Plaintiff appeared by its counsel Jan P. Weir and Douglas Hahn, and defendant appeared by its counsel James E. Doroshow and Brian Hafter. Having read the parties' papers and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS plaintiff's motion and enters a preliminary injunction against defendant.

**BACKGROUND**

Plaintiff Vertos Medical, Inc. ("Vertos") is a medical device company focused on the treatment of debilitating spinal conditions – in particular, lumbar spinal stenosis. Vertos developed a surgical procedure which it asserts is less invasive than the surgery that has traditionally been used to treat lumbar spinal stenosis, and which enables shorter inpatient therapy and recovery times.

Vertos calls its procedure "Mildly Invasive Lumbar Decompression" – or "MILD." Vertos has been marketing the MILD procedure since 2006, using its MILD trademark on

its website; in its product packaging, advertising materials, and educational literature; and at trade shows. Vertos asserts that it has spent approximately $5 million in the last year to market its MILD procedure.

Vertos filed an application for the MILD mark on April 4, 2007 with the U.S. Patent and Trademark Office ("PTO"). On January 20, 2009, Vertos received Federal Trademark Registration No. 3,565,273 for the MILD mark.

Vertos claims that defendant Globus Medical Inc. ("Globus") has recently been attempting to trade off Vertos' goodwill and marketing efforts by using the confusingly similar term "MILDER" in order to confuse customers into believing that Globus' products are Vertos' products or are the same as Vertos' products.

Specifically, Vertos asserts that starting in about February 2009, Globus began issuing press releases relating to its new "MILDER(TM)" spine care products and portfolio. According to Vertos, Globus markets products with the "MILDER" designation to the same customers as Vertos, and Globus' products also treat lumbar spinal stenosis. Globus filed three registrations with the PTO for the term MILDER, for goods and services relating to non-invasive spinal implants used in surgical procedures. Vertos opposed the registrations, and also sent Globus a cease-and-desist letter on February 12, 2009.

Vertos filed the present action on March 13, 2009, alleging causes of action for trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; false designation of origin and unfair competition under § 43 of the Lanham Act, 15 U.S.C. § 1125; unfair competition under California Business & Professions Code § 17200; common law misappropriation; and unfair business practices under Business & Professions Code § 17200.

Vertos now seeks an order preliminarily enjoining Globus from making or selling any products using Vertos' MILD trademark, or any other marks that are confusingly similar to Vertos' trademark, including, the designation "MILDER" alone or as part of any other designs, word or words, trademark, service mark, trade name, trade dress or other business or commercial designation or any logo, symbol or design.

**DISCUSSION**

A.  Legal Standard

A plaintiff seeking a preliminary injunction must establish that it is likely to succeed on the merits, that it is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in its favor, and that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., 129 S.Ct. 365, 374 (2008); see also Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 877 (9th Cir. 2009).

In trademark infringement cases, however, if the plaintiff demonstrates a likelihood of success on the merits, the court presumes irreparable injury because trademark damages are, by their very nature, irreparable. Brookfield Commc'ns, Inc. v. West Coast Entm't Corp., 174 F.3d 1036, 1066 (9th Cir. 1999); see also Marlyn, 571 F.3d at 877. "This presumption effectively conflates the dual inquiries of this prong into the single question of whether the plaintiff has shown a likelihood of success on the merits." GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 n.4. (9th Cir. 2000).

B.  Plaintiff's Motion

    1.  Likelihood of success on the merits

In order to prevail on the merits of its trademark and unfair competition claims under § 32 and § 43(a) of the Lanham Act, Vertos must prove that it has a valid trademark, and that the mark used by Globus presents a likelihood of confusion with Vertos' mark. See Brookfield, 174 F.3d at 1046; see also Comedy III Prods., Inc. v. New Line Cinema, 200 F.3d 593, 594 (9th Cir. 2000).

        a.  Valid trademark

Vertos argues, first, that its trademark is valid and protectable. Vertos notes that it filed the trademark application with the PTO in April 2007 and first used the mark in commerce in September 2007, and that the PTO registered the mark in January 2009. In opposition, Globus argues that Vertos MILD mark is generic, should not have been registered, and is invalid.

Federal registration of a mark is prima facie evidence of the validity of the mark and the owner's exclusive right to use the mark on the goods and services specified in the registration. 15 U.S.C. § 1057(b); see also Quiksilver, Inc. v. Kymsta Corp., 466 F.3d 749, 755 (9th Cir. 2006) (citing Brookfield, 174 F.3d at 1047); Coca-Cola Co. v. Overland, Inc., 692 F.2d 1250, 1254 (9th Cir.1982) ("[f]ederal registration of a trademark endows it with a strong presumption of validity.").

"The plaintiff in an infringement action with a registered trademark is given the prima facie or presumptive advantage on the issue of validity, thus shifting the burden of production to the defendant to prove otherwise." Tie Tech, Inc. v. Kinedyne Corp., 296 F.3d 778, 783 (9th Cir. 2002). The defendant may overcome the presumption of validity by a showing by the preponderance of the evidence that the mark was or has become generic – that is, neither inherently distinctive nor descriptive with a secondary meaning. See Yellow Cab Co. of Sacramento v. Yellow Cab of Elk Grove, Inc., 419 F.3d 925, 927-28 (9th Cir. 2005).

Globus asserts that because MILD is an acronym for the generic term "minimally invasive lumbar decompression," it is not a trademark and can never be a trademark, as the phrase "minimally invasive lumbar decompression" identifies the product, rather than its source or any particular feature of the product.

Globus contends that Vertos itself uses MILD generically. As an example, Globus points to a Vertos advertising brochure which refers to "mild, which stands for Minimally Invasive Lumbar Decompression." Globus asserts that when a trademark plaintiff uses the claimed mark generically, this is strong evidence that the term or phrase is generic, and not a protectable mark.

Globus claims that because Vertos is using the term at issue as nothing more than the name of a procedure – one which is imminently common and well-known among those in the area of spinal medicine – the term is self-explanatory and cannot be trademarked. Indeed, Globus argues, permitting Vertos any protection for the MILD mark would be to effectively grant Vertos a monopoly on the right to describe this common medical

4

procedure.

Based on the federal registration of Vertos' MILD mark, the court finds that Vertos has established a likelihood of success as to the validity of the mark. While the phrase "minimally invasive lumbar decompression" may in fact be the name of a commonly-known medical procedure, Vertos did not obtain registration of that phrase, but of the term MILD. Globus has not provided sufficient evidence to rebut the presumption of validity that arises from the registration of MILD. Specifically, Globus has not established that the mark MILD is used generically for the "minimally invasive lumbar decompression" procedure, or that it has become generic for Globus' products.

          b.      Likelihood of confusion

In determining whether confusion between related goods is likely, the Ninth Circuit considers eight factors: (1) strength of the mark; (2) relatedness of the goods and services; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channel used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) the defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines. AMF, Inc. v. Sleekcraft Boats, 599 F.3d 341, 349 (9th Cir. 1979).

A likelihood-of-confusion determination may rest on all eight factors, or on only those factors that are most pertinent. See, e.g., Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc., 109 F.3d 1394, 1404 (9th Cir. 1997). "Although some factors – such as the similarity of the marks and whether the two companies are direct competitors – will always be important, it is often impossible to reach a conclusion with respect to likelihood of confusion after considering only a subset of the factors." Dreamworks Prod. Group, Inc. v. SKG Studio, 142 F.3d 1127, 1130-32 (9th Cir. 1998); see also GoTo.Com, 202 F.3d at 1205 (although all eight factors are relevant to the analysis, the similarity of the marks, the relatedness of the products or services, and the use of common marketing channels are the most important).

          (1)      Strength of the mark

The initial strength of a mark is determined by its placement on the standard

5

continuum of marks (from weakest to strongest) – generic, descriptive, suggestive, arbitrary, or fanciful.  See, e.g., M2 Software, Inc. v. Madacy Entm't, 421 F.3d 1073, 1080 (9th Cir. 2005); see also Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 768 (1992).

A strong mark is entitled to more protection than a weak one.  Sleekcraft, 599 F.2d at 349.  The last three categories – "fanciful," "arbitrary," and "suggestive" – are deemed inherently distinctive and entitled to protection, because they "serve[ ] to identify a particular source of a product."  Two Pesos, 505 U.S. at 768.

"Fanciful" marks consist of "coined phrases" that have no commonly known connection with the product at hand, while "arbitrary" marks are "common words" that also have no connection with the actual product.  Surfvivor Media, Inc. v. Survivor Prods., 406 F.3d 625, 631-32 (9th Cir. 2005).  Marks falling into the "suggestive" category do not describe the product's features, but suggest them.  Id. at 632.  That is, if a consumer must use imagination or some type of multistage reasoning to understand the mark's significance, then the mark "suggests" the product's features, and is also entitled to protection.  Kendall-Jackson Winery Ltd. v. E. & J. Gallo Winery, 150 F.3d 1042, 1047 n.8 (9th Cir. 1998).

A descriptive mark defines a particular characteristic of a product in a way that does not require any exercise of the imagination.  Surfvivor, 406 F.3d at 632 (citations omitted). Although not inherently distinctive, a "descriptive" mark can receive trademark protection if it has acquired distinctiveness by establishing a "secondary meaning" in the marketplace. See E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1291 (9th Cir. 1992).

At the "weak" end of the spectrum, a mark is "generic" if it describes the product or service with which it is affiliated in its entirety.  Surfvivor, 406 F.3d at 632; Kendall-Jackson, 150 F.3d at 1047 n.8.  "Generic" marks are not registrable, and a registered mark may be canceled at any time on the grounds that it has become generic.  Park 'N Fly, Inc. v. Dollar Park & Fly, Inc., 469 U.S. 189, 194 (1985); see also Yellow Cab, 419 F.3d at 927.

Here, Vertos argues that the MILD mark is, at a minimum, "arbitrary," since it involves a common word with no connection with the product.  Vertos asserts that this,

6

together with the consistent advertising efforts and substantial marketing expenditures, establishes the overall strength of Vertos' mark.

Globus contends, however, that the mark is nothing more than an acronym for a commonly-understood medical procedure, and as such is "generic." Globus disputes Vertos' claim that the mark is "arbitrary" because it purportedly has no connection with the product to designate the source of Vertos' spinal care products. Globus asserts that because Vertos readily admits that MILD stands for "minimally invasive lumbar decompression," it is clearly not "arbitrary."

Globus' claim that MILD is "generic" appears to be based on the premise that a mark will always be "generic" if the mark is an acronym for words that identify a commonly-known object or procedure. In other words, under this theory, if the name of the object or procedure is not entitled to trademark protection because it is "generic," then the acronym also must be "generic," and cannot be protected as a trademark.

As noted above, however, a mark that is federally registered is presumed not to be generic. See 15 U.S.C. § 1057(b); see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 408 F.3d 596, 604 (9th Cir. 2005) (general presumption of validity resulting from federal registration includes specific presumption that trademark is not generic). Globus has not rebutted that presumption by showing that MILD itself (as opposed to the phrase "minimally invasive lumbar decompression") is used as a generic term.

The court finds further that the MILD mark is not "descriptive," as it does not in itself convey any knowledge of the characteristics of the product or service. See, e.g., In re MBNA America Bank, N.A., 340 F.3d 1328, 1332 (Fed. Cir. 2003). That is, MILD does not "define qualities or characteristics of a product in a straightforward way that requires no exercise of the imagination to be understood." Kendall-Jackson, 150 F.3d at 1047 n.8. ("Honey Baked Ham" is a descriptive term for a ham that has been baked with honey, and "Honey Roasted Nuts" is a descriptive term for nuts that have been roasted with honey.).

A term that is "suggestive" conveys an impression of the product or service, but

"requires a mental leap from the mark to the product." Brookfield, 174 F.3d at 1058 & n.19 (using "Roach Motel" cockroach traps as an example). If the "mental leap" is not instantaneous, "this strongly indicates suggestiveness, not direct descriptiveness." Self-Realization Fellowship Church v. Ananda Church of Self-Realization, 59 F.3d 902, 911 (9th Cir. 1995). Here, the mark MILD does not suggest anything to do with spinal surgery. Accordingly, the court agrees with Vertos that the MILD mark is "arbitrary," and as such, is moderately strong.

(2) Relatedness of the goods and services

Related goods or services are those which could reasonably be thought by the buying public to come from the same source if sold under the same mark. See Sleekcraft, 599 F.2d at 348 n.10. "Related goods are more likely than non-related goods to confuse the public as to the producers of goods." Official Airline Guides, Inc. v. Goss, 6 F.3d 1385, 1392 (9th Cir. 1993); see also E. & J. Gallo, 967 F.2d at 1291.

Vertos contends that the parties' goods directly compete, and that this factor is always important, as directly competing goods are in the closest proximity under the likelihood-of-confusion analysis and complementary products or services are particularly vulnerable to confusion. Specifically, Vertos asserts that because both Vertos and Globus distribute and sell products to treat lumbar spinal stenosis – Vertos under the MILD mark, and Globus under the MILDER mark – and because the means of marketing for each are similar, there is a real danger that the consuming public will believe that Globus' product originates with Vertos.

In opposition, Globus asserts that the parties' services are different. Globus contends that Vertos' surgical procedure is limited to the treatment of lumbar spinal stenosis, while Globus' procedure is not limited to treatment of the lower back, but is also used to treat "cervical issues," the thoracic portion of the spine, and "other serious ailments."

Globus also contends that Vertos' MILD procedure is based on making an incision and removing a small amount of bone or ligament, while Globus' "MILDER portfolio"

8

1  involves the removal of a larger amount of tissue, and the placement of an implant to
2  support the impacted region. Globus notes that Vertos' CEO James Corbett testified in his
3  deposition that the parties' products are "quite different" and that Vertos' advertising
4  distinguishes the MILD procedure on the basis that there are "no implants left behind"
5  (because Vertos does not use implants).

6  Globus contends that because of these differences, the patients appropriate for
7  Vertos' procedure are not the same as the patients appropriate for Globus' procedures.
8  Globus asserts that surgeons recommend Globus' procedures in more serious cases that
9  must be treated by removing a larger amount of anatomical tissue, and that require the
10 placement of an implant to support the impacted region. Globus contends that this
11 difference was confirmed by Mr. Corbett in his deposition testimony.

12 Globus points to two additional differences – Vertos' MILD relates to its surgical
13 procedure, while Globus' MILDER portfolio includes a group of products; and Globus'
14 surgeons do not purchase instruments from Globus to install the implants, while Vertos
15 supplies its surgeons with instruments.

16 The court finds that this factor slightly favors Vertos. It is true that Globus' mark
17 MILDER is used to refer to procedures other than spinal surgery, but it is also true that both
18 MILD and MILDER are used to refer to surgery for spinal stenosis. The fact that MILDER
19 refers to other products or services is not sufficient to make the two terms unrelated. The
20 test is not whether the competing terms refer to identical products or services.

21                (3)    Similarity of the marks

22 The greater the similarity between the two marks, the greater the likelihood of
23 confusion. See GoTo.Com, 202 F.3d at 1206. Similarity may be determined by the
24 appearance, sound, and meaning of the marks, considered in their entirety and as they
25 appear in the marketplace. Id. Where the goods are directly competitive, the degree of
26 similarity required to prove a likelihood of confusion is less than in the case of dissimilar
27 products. Sleekcraft, 599 F.2d at 350.

28  A determination that two marks are similar in "appearance" essentially amounts to

an "I know it when I see it" analysis.  See 4 J. McCarthy on Trademarks and Unfair Competition ("McCarthy") (4th ed.) § 23:25 ("Similarity of appearance between marks is really nothing more than a subjective 'eyeball' test"); GoTo.Com, 202 F.3d at 1206 ("With a single glance at the two images, one is immediately struck by their similarity.").

Vertos contends that Globus' term MILDER is not only similar to Vertos' registered mark MILD – it is virtually identical, except that the mark MILDER has "ER" appended, which is nothing more than the comparative form of MILD.

In opposition, Globus asserts that its MILDER portfolio encompasses an approach to spine care that integrates minimally invasive surgical techniques with implants, instrumentation, and education designed to lessen the disruption to a patient's anatomic structures or national range of motion in order to facilitate an earlier recovery.  Globus contends that it has used the MILDER acronym since 2009; that the MILDER portfolio encompasses seven products; and that since May 2009, it has not used MILDER as a standalone mark, but rather only when accompanied by the words "Minimally Invasive, Less Disruptive, Earlier Recovery."

Globus argues that no reasonably prudent consumer (a highly educated and discerning surgeon) would be objectively likely to confuse a one-word mark (MILD) with a mark (MILDER) that also includes the phrase "Minimally Invasive, Less Disruptive, Earlier Recovery."  Globus also asserts that "minimally invasive lumbar decompression" does not have the same meaning as "minimally invasive, less disruptive, earlier recovery."

The court finds that this factor favors Vertos.  MILD and MILDER are nearly identical, and indeed, MILDER incorporates the whole of Vertos' MILD mark.  Globus' argument that consumers would not be confused by the similarity between MILD and MILDER because MILDER is followed by a six-word definition, simply ignores the closeness of MILD to MILDER.

Moreover, the court notes that the PTO suspended action on Globus' application for registration of its MILDER applications, concluding, on the basis of the similarity of the marks MILD and MILDER and the close relation of the parties' products, that there was "a

likelihood of confusion with the mark in U.S. Registration No. 3565273 [Vertos' MILD mark]." See PTO Notice of Suspension, Serial Number 77/648399, June 19, 2009.

(4) Evidence of actual confusion

"Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." M2 Software, 421 F.3d at 1082). Nevertheless, because actual confusion may be difficult to prove, the absence of such evidence is generally not noteworthy. Brookfield, 174 F.3d at 1050; see also Cohn v. Petsmart, Inc., 281 F.3d 837, 842 (9th Cir. 2002).

Vertos argues that here, because the "average consumer" of Vertos' products will be the same as the "average consumer" of Globus' products – because the products are aimed at the same category of consumer – it is inevitable that the consumers will be confused about the origin of products.

In opposition, Globus asserts that Vertos has provided no evidence whatsoever of actual confusion, and that Mr. Corbett testified in his deposition that no patients had expressed any confusion between Vertos' mark and Globus' mark.  As for Vertos' argument that this factor is not important, Globus argues that while it may not be dispositive, it is still one of the factors that the court should consider, and that because Vertos has provided no evidence, this factor favors Globus' position.

The court finds that this factor slightly favors Globus, as Vertos has produced no evidence of actual confusion (other than the comment by the PTO when it refused Globus' application for registration of MILDER).  However, the Ninth Circuit does not consider this factor to be dispositive, and accords it less weight than some of the other factors.

(5) Marketing channel used

"Convergent marketing channels increase the likelihood of confusion." Nutri/System, Inc. v. Con-Stan Indus., Inc., 809 F.2d 601, 606 (9th Cir. 1987); see also Brookfield, 174 F.3d at 1057.  Vertos contends that the parties use identical marketing channels – print advertising, trade shows, Internet advertising, press releases, and direct sales efforts.

11

In opposition, Globus asserts that Vertos has failed to demonstrate by competent evidence that the parties use the same marketing channels. Globus contends that the customers for its products are orthopedic surgeons and neurosurgeons, and that it markets its products primarily by meeting with surgeons in their offices and hospitals, and in surgeon visitation and training programs held at Globus' facilities, and also by meeting with surgeons at trade shows. Globus asserts that it does not sell or promote its products over the Internet, and (unlike Vertos) does not advertise its products via radio, newspapers, or other media channels. According to Globus, Mr. Corbett admitted in his deposition that Globus does not market its products through the same channels of trade as Vertos.[1]

The court finds that this factor slightly favors Vertos. Both companies market their products to spinal doctors. From the evidence presented, it appears that Globus focuses on direct marketing (face-to-face) to surgeons in their offices, while Vertos markets face-to-face to surgeons at trade shows, and also markets to the ultimate consumer – the patient – via other forms of advertising. The marketing channels are not identical, but the two companies do use some of the same channels.

    (6)  Type of goods and the degree of care likely to be exercised by the purchaser

While "[l]ikelihood of confusion is determined on the basis of a 'reasonably prudent consumer' . . . "[w]hat is expected of this reasonably prudent consumer depends on the circumstances." Brookfield, 174 F.3d at 1060. When purchasing expensive items, the buyer is expected to be more discerning and less easily confused. Id.; see also E. & J. Gallo, 967 F.2d at 1293 (if goods or services are expensive, it is assumed that buyers will exercise greater care in their purchases); Sleekcraft, 599 F.2d at 353. Conversely, when purchasing inexpensive items, customers often exercise less care, thereby making confusion more likely. Brookfield, 174 F.3d at 1060.

Vertos contends that here, the ultimate consumer (the patient suffering from spinal

---

[1] Actually, Mr. Corbett simply testified that he did not know the particulars of Globus' marketing and advertising efforts.

12

stenosis) is unlikely to be the direct purchaser of the surgical kit, which is traditionally purchased by the physician. Vertos concedes that the product is somewhat expensive and the physician-consumer would be considered relatively discerning, but argues nonetheless that the marks are so similar that even an astute consumer could easily be confused, particularly given that the actual purchase may be handled by an assistant to the surgeon or other hospital employee.

In opposition, Globus contends that Vertos has made no effort to define the degree of care of the parties' respective customers with any particularity. Globus notes that Vertos acknowledges that the purchasers of the parties' products are physicians, who are "relatively discerning." Globus also points to Mr. Corbett's deposition testimony, where he stated that surgeons exercise a high degree of care in selecting the appropriate instruments and implants for surgical procedures, and that surgeons would not likely be confused as to the source of Vertos' MILD and Globus' MILDER products, and in fact would be able to distinguish the products.

The court finds that this factor slightly favors Globus. While some advertising may be aimed at patients, who are not necessarily particularly sophisticated, the target audience that will would likely be authorizing the purchase of the product/service consists of surgeons. Even if the surgeons became confused between MILD and MILDER, the degree of care likely to be exercised by such surgeons militates in favor of Globus' position.

(7)   Defendant's intent in selecting the mark

When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public. See Official Airline Guides v. Goss, 6 F.3d, 1385, 1394 (9th Cir. 1993); see also Sleekcraft, 599 F.2d at 354. Although intent to confuse consumers can constitute strong evidence of confusion, the converse is not true, as "the lack of intent by a defendant is largely irrelevant in determining if consumers likely will be confused as to source." Brookfield, 174 F.3d at 1059 (citation and quotation omitted); GoTo.Com, 202 F.3d at 1208 (even upon a finding of innocent intent, "it would prove nothing since no such intent is necessary to demonstrate a likelihood of confusion").

13

Here, based on the fact that Vertos filed for trademark registration of its MILD mark in April 2007, and the application was published in the Official Gazette for opposition by any person who believed he would be damaged by the registration of the mark (pursuant to 15 U.S.C. § 1062(a)); and also based on the fact that the mark was registered on January 20, 2009, Vertos asserts that Globus knew about the MILD mark, and therefore is presumed to have knowingly adopted a mark similar to Vertos' mark and to have intended its MILDER spinal care products to be confused with Vertos' MILD spinal care products.

Vertos also notes that it sent Globus a cease-and-desist letter on February 12, 2009, after it first learned of Globus' intent to adopt the MILDER mark and to market spinal care products under that mark. Vertos contends that notwithstanding all this, Globus continues to disregard Vertos' rights and demands, and continues to use the MILDER mark for its spinal care products.

In opposition, Globus asserts that it did not select its MILDER mark with any bad-faith intent, and notes that plaintiff has not provided any evidence of such bad faith. Thus, Globus contends, this factor favors its position. Globus notes that Mr. Corbett admitted in his deposition that he was speculating when he stated in his declaration that the only possible explanation for the similarities between the marks is that Globus was trying to capitalize on the advertising and promotion expended by Vertos' product, and when he stated that Globus was hoping to siphon customers away from Vertos. Corbett also conceded that he "could be wrong" about Globus' intent in selecting the MILDER mark.

Globus contends that in fact, it selected the MILDER mark because it wanted to distinguish its umbrella brand from those of the numerous other companies involved in the field of minimally invasive surgery (or "MIS"). Globus believed that the term "minimally invasive surgery" is generic within the industry, referring generally to the making of a very small incision.

The court finds that this factor favors Vertos. While it is true that Vertos has provided no evidence to support its claim that Globus acted deliberately, it is not necessary for the trademark infringement plaintiff to prove that the alleged infringer acted with the

intent to confuse prospective purchasers. See Official Airline Guides, 6 F.3d at 1394. Intent can be presumed where the alleged infringer adopted a mark similar to the plaintiff's mark, "with knowledge, actual or constructive, that it was another's trademark." Brookfield, 174 F.3d at 1059.

Vertos filed its application for registration of the MILD mark, and received the registration, prior to the date that Globus began issuing press releases announcing its new "MILDER(TM)" spine care products and portfolio. Moreover, Vertos served Globus with a cease-and-desist letter on February 12, 2009. Accordingly, based on Globus' knowledge of Vertos' MILD mark, the court can presume intent to deceive. Id.; see also Sleekcraft, 599 F.2d at 354; CytoSport, Inc. v. Vital Pharmaceuticals, Inc., 617 F.Supp. 2d 1051, 1072 (E.D. Cal., 2009).

(8)   Likelihood of expansion of the product lines

To evaluate this factor, the court must determine "whether existence of the allegedly infringing mark is hindering [the plaintiff's] expansion plans." Surfvivor, 406 F.3d at 634 (citation omitted); see also E. & J. Gallo, 967 F.2d at 1293 ("[A] strong possibility of expansion into competing markets weighs in favor of finding of infringement."). However, this factor is "relatively unimportant" in situations where the products manufactured and/or sold by the two companies already directly compete. See Brookfield, 174 F.3d at 1060.

Here, Vertos provides no evidence showing that its expansion plans have been hindered by Globus' use of the MILDER mark. Because the parties are direct competitors, however, Vertos asserts that this factor favors its position.

In opposition, Globus argues simply that Vertos has provided no evidence of likelihood of expansion into other markets, and that this factor therefore favors Globus. Based on the lack of evidence provided by Vertos as to this factor, the court finds that this factor favors Globus.

In sum, five of the eight factors favor Vertos (strength of the mark, relatedness of goods or services, similarity of the marks, marketing channels used, and intent of alleged infringer), while only three factors favor Globus (evidence of actual confusion, type of goods

and degree of care, and likelihood of expansion of product lines). Moreover, of the three factors that are considered most significant (relatedness of goods and services, similarity of the marks, and marketing channel used), all favor Vertos, at least slightly.

On balance, the court finds that Vertos has established a likelihood of success as to the likelihood-of-confusion prong of its trademark infringement cause of action, and therefore, as to the cause of action itself.

2.   Irreparable harm

Vertos contends that it will be irreparably harmed in the absence of a preliminary injunction. Vertos first notes that in trademark infringement cases, irreparable injury is presumed once the plaintiff has established a likelihood of confusion. Nevertheless, Vertos asserts, it can demonstrate irreparable harm even absent this presumption.

Vertos argues that if Globus is permitted to continue marketing its competing spinal care products, Vertos will likely lose business and business opportunities, which will harm its business and its business reputation. Vertos asserts that Globus' use of a trademark that is confusingly similar to Vertos' mark in association with spinal care products places Vertos' reputation and goodwill with the consuming public at risk. Vertos argues that because it has no control over the quality of Globus products, any negative outcome resulting from Globus' MILDER products will be likely to have a negative impact on the reputation of Vertos' MILD products.

In opposition, Globus contends that the standard allowing a presumption of irreparable injury when there is a showing of likelihood of success is "outdated" authority, and that under the Supreme Court's 2008 decision in Winter, Vertos is required to show the likelihood of irreparable injury. As noted above, however, as recently as July 2009, the Ninth Circuit still recognized the "presumption of irreparable injury" standard in trademark infringement suits. See Marlyn Nutraceuticals, 571 F.3d at 877.

As for Vertos' showing of irreparable harm, Globus argues that it is based solely on the Corbett Declaration, and asserts that the statements by Mr. Corbett are entirely speculative – in particular the statement that if Globus is permitted to continue marketing its

16

products using the MILDER mark, "Vertos will lose business and business opportunities, thereby harming Vertos['] business and its business reputation."

Globus contends that Vertos' interrogatory responses also show that it has no claim of irreparable harm. When asked for all facts, persons, and documents supporting the contention that, absent injunctive relief, Vertos would suffer irreparable harm, Vertos merely referred Globus to the supporting documents provided in Vertos' motion for preliminary injunction – that is, the Corbett Declaration (the only evidence provided by Vertos in support of its motion).

Finally, Globus contends that Vertos' assertion of irreparable harm is also belied by the fact that Vertos' MILD procedures are not yet widely commercially available. Globus notes moreover that in his deposition, Mr. Corbett contradicted his declaration when he testified that Vertos' MILD has <u>not</u> gained "nationwide notoriety," as it is known by only about 150 spinal surgeons, and only 250 patients have undergone the MILD procedure. Mr. Corbett also testified that he was not aware that Vertos had lost any surgeons to Globus, or that Vertos had lost any business to Globus, or that Vertos had lost any business due to Globus' use of the mark MILDER.

The court finds that Vertos has not provided any evidence of irreparable harm, beyond the speculative musings of its CEO and President about what might happen if the motion is denied. However, the court presumes irreparable harm, based on its finding that Vertos has established likelihood of success on the trademark infringement claim.

3.  Balance of hardships

Vertos asserts that because the harm that will befall it if the motion is denied is irreparable, the balance of hardships sharply favors its position. Conversely, Vertos argues, the threatened harm to Globus is nominal, and Globus needs only to cease its use of the confusing MILDER trademark in connection with its promotion, advertising, and sale of its products and services.

In opposition, Globus argues that Vertos' contention that the balance of equities favors Vertos is based on the same conclusory assertion of "irreparable harm." Globus

17

also disputes Vertos' claim that the harm to Globus would be "minimal" if the court were to grant the preliminary injunction – arguing that if the injunction were to issue, Globus would be prohibited from using its MILDER mark in connection with its sale of goods and services, and that its customers would be confused.

Given that Vertos has established a likelihood of success on the trademark infringement claim, and that irreparable harm is therefore presumed, the court finds that the potential irreparable harm to Vertos outweighs any injury to Globus. Moreover, any harm threatened to Globus is nominal, as Globus need only cease its use of the MILDER mark, which, at least for purposes of the present motion, Vertos has shown is confusingly similar to Vertos' MILD mark. On the other hand, if an injunction is not issued, Vertos will continue to suffer injury to its business and loss of good will in the community.

  4.  Public interest

Finally, Vertos argues that the public interest favors injunctive relief, as the public has a right to be free from the type of deceptive practices associated with unfair business practices and the use of marks belonging to another for commercial gain.

In opposition, Globus contends that Vertos' argument is based on a false premise – that Globus' use of the MILDER mark causes confusion among consumers, or is deceptive and unfair. Globus argues in addition that the public interest supports the denial of the motion, and asserts that the issuance of an injunction would inhibit free competition.

In the trademark context, courts often define the public interest as the right of the public not to be deceived or confused. See, e.g., Moroccanoil, Inc. v. Moroccan Gold, LLC, 590 F.Supp. 2d 1271, 1282 (C.D. Cal. 2008) (quoting Opticians Ass'n of America v. Independent Opticians of America, Inc., 920 F.2d 187, 198 (9th Cir. 1990)). In light of the court's finding that Vertos has established a likelihood of success as to the trademark infringement claim, the court finds that the public interest weighs in favor of granting an injunction.

C.  Objections to Evidence

Each side has filed objections to the other side's evidence, primarily asserting lack of

personal knowledge and inappropriate expert testimony by a lay witness.

The objections are OVERRULED. To the extent that the court relied on the challenged evidence, the court finds that the statements are sufficiently grounded in personal knowledge gained through investigation or review of documents maintained in the course of business by the parties. As for the objections asserting improper opinion testimony, neither party has established that any facts stated require specialized expert or technical knowledge.

## CONCLUSION

In accordance with the foregoing, Vertos' motion for preliminary injunction is GRANTED.

IT IS HEREBY ORDERED that to prevent irreparable injury, loss, and damage to Vertos Medical, Inc., its goodwill, and reputation in selling and marketing its products and procedures for the diagnosis and treatment of spinal disorders, a preliminary injunction is hereby GRANTED and issued as of this 6th day of November, 2009, restraining and enjoining defendant Globus Medical, Inc., as follows:

A. Globus and its agents, officers, directors, servants, employees, and attorneys, its successors and assigns, and all others in active concert or participation with Globus are preliminarily enjoined from directly or indirectly using Vertos' MILD Trademark, or any other marks which are confusingly similar to or colorable imitations of Vertos' Trademark, including, without limitation, the designation "milder" alone or as part of or together with any other designs, word or words, trademark, service mark, trade name, trade dress, or other business or commercial designation or any logo, symbol or design.

B. Globus shall file with the Court and serve on Vertos, within thirty (30) days of the entry of this Preliminary Injunction, a report in writing and under oath, setting forth in detail the manner and form in which Globus has complied with the injunction.

IT IS HEREBY FURTHER ORDERED that this Preliminary Injunction will take effect upon Vertos' posting of a bond in the amount of $50,000. The bond shall be posted no

later than seven days from the date of this order.[2]  The Preliminary Injunction shall be valid and in effect until further order of this court.

**IT IS SO ORDERED.**

Dated:  November 6, 2009

_____
PHYLLIS J. HAMILTON
United States District Judge

---

[2] This amount is arbitrarily set by the court given that the parties submitted no argument in this regard.  Either party believing the amount to be excessive or inadequate may request an adjustment within seven days of the date of this order.